UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2019 APR 16  AM 11: 07

U.S. DISTRICT COURT
DISTRICT OF MASS.

JONATHAN MULLANE, )
)
*Plaintiff,* )
)
v. )
)
MARY L. MORRISSEY, in both )
her individual and official capacities, )
and WASHINGTON COUNTY )
CRIMINAL DIVISION BENCH )
WARRANT NO. 11544, )
)
*Defendants.* )
)

DOCKET NO.

**TRIAL BY JURY DEMANDED**

## VERIFIED COMPLAINT
## AND REQUEST FOR A PRELIMINARY INJUNCTION

COMES NOW Plaintiff Jonathan Mullane (hereinafter, "Plaintiff") and, complaining of Defendants the Honorable Mary L. Morrissey (hereinafter, "Judge Morrissey" or "Morrissey") and Washington County Criminal Division Bench Warrant No. 11544 (hereinafter, collectively, "Defendants"), brings this action for declaratory and injunctive relief under 28 U.S.C. § 1331 and avers as follows:

## PARTIES

1.    Plaintiff Jonathan Mullane is a natural person and citizen of the Commonwealth of Massachusetts, County of Middlesex.

2.    Defendant the Honorable Mary L. Morrissey (hereinafter, "Judge Morrissey" or "Morrissey") is a judge in the employ of the State of Vermont, to wit, the Washington County Criminal Division. Judge Morrissey is a citizen of the State of Vermont.

3.   Washington County Criminal Division Warrant No. 11544 is a Vermont bench warrant issued by Judge Morrissey in the state court on January 25, 2019.

## JURISDICTION AND VENUE

4.   This Court has *in rem* jurisdiction over Washington County Criminal Division Warrant No. 11544. See, e.g., Marcus v. Search Warrant, 367 U.S. 717 (1961) (exercising *in rem* jurisdiction over a state warrant).

5.   This Court has *in personam* jurisdiction over Defendant Morrissey, as the causes of action herein give rise to a "federal question" within the meaning of 28 U.S.C. § 1331.

6.   Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims herein occurred in this District. The harm from Washington County Criminal Division Warrant No. 11544 arises specifically in this District.

7.   Pursuant to the holding of Ex Parte Young, 209 U.S. 123 (1908), *inter alia*, this Court is authorized to grant injunctive and declaratory relief against state officials to prevent *prospective* harm.

8.   The adjudication of this matter in an Article III forum at this point in time is required. Any federal review *subsequent* to the "prospective harm"—i.e., after Plaintiff is denied his right to be self-represented in the criminal action, and after being denied the opportunity to contest "probable cause"—would be rendered moot given that the harm will have already occurred. See, e.g., Ex Parte Young, 209 U.S. 123 (1908) (providing for Article III injunctive relief against state officials for *prospective* harm).

9.   Because no final judgment was entered in the foregoing state court proceeding— particularly given that no trial has ever taken place in this matter—the Rooker-Feldman doctrine does not apply to the instant action, and this matter is both ripe and justiciable in an Article III forum.

10.   In the case at bar, abstention[1] is inapposite and unwarranted given the lack of any adequate state remedy,[2] because the duplicative civil and criminal actions against Plaintiff were brought in "bad faith," and because Plaintiff's claims pertain to substantive constitutional rights.

11.   *Inter alia*, Plaintiff now seeks relief from the prospective harm of Washington County Criminal Division Warrant No. 11544, and the prospective harm of not being able to represent himself in a criminal action, in violation of his Sixth Amendment rights. Plaintiff further seeks relief from the *prospective* harm of a violation, or continuing violation, of his right to due process under the Fourteenth Amendment.

12.   The United States Supreme Court held in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005):

> In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. **Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction** and state law determines whether the defendant prevails under principles of preclusion." (Citations omitted) (emphasis supplied) at 293.

13.   As the First Circuit explained in Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508 (1st Cir. 2009):

---

[1] Including, without limitation, abstention doctrines under Younger v. Harris, 401 U.S. 37 (1971) and Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) ("[T]he pendency of an action in the state court is **no bar to proceedings concerning the same matter in the Federal court** having jurisdiction." At 292).

[2] As explained hereinbelow, notwithstanding a separate complaint seeking extraordinary relief, the Supreme Court of Vermont refused to reach any of the issues herein.

Abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. These doctrines call upon federal courts to decline to exercise their properly held jurisdiction in circumstances where the interests of comity and federalism predominate. As a general matter, **abstention should be the exception, not the rule. The balance of state and federal interests only rarely favors abstention. Only** <u>**extraordinary circumstances**</u> **may justify abdication of the virtually unflagging obligation to exercise the jurisdiction given the federal courts.** (Emphasis supplied) at 517.

14. In the case at bar, there are no "extraordinary circumstances" which would warrant abstention by this Court, and because the subject criminal action seeking duplicative payments from Plaintiff is brought in "bad faith."

15. Federal actions such as the instant one seeking injunctive relief against state officials under both <u>Ex Parte Young</u> and the plain language 42 U.S.C. § 1983 constitute an exception to the Anti-Injunction Act of 1793. Just as it held in countless other cases, in <u>Mitchum v. Foster</u>, 407 U.S. 225, 229 (1972), the Court explained in pertinent part:

[T]his Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights. **Ex parte Young, 209 U.S. 123;** cf. <u>Truax v. Raich</u>, 239 U.S. 33; <u>Dombrowski v. Pfister</u>, 380 U.S. 479. For these reasons we conclude that, under the criteria established in our previous decisions **construing the anti-injunction statute, § 1983 is an Act of Congress that falls within the "expressly authorized" exception of that law.**

## MATERIAL FACTS

16. In or around November 2018, the Vermont state police issued Plaintiff both: (1) a criminal citation for alleged speeding; and (2) a *separate* civil complaint for the very same occurrence of alleged speeding. The arraignment in connection with the criminal citation was scheduled for January 2019 in the Washington County Criminal Division in Barre, Vermont.

17.  *Inter alia,* Plaintiff, in writing:

    (1) Requested a "probable cause" hearing, as expressly permitted under Vermont law;

    (2) Moved to dismiss the information of the State of Vermont; and

    (3) Waived his appearance at arraignment, as expressly permitted under Vermont law.

18.  In writing, the State of Vermont assented to Plaintiff's waiver of his appearance at arraignment, and submitted its written assent to Defendant Morrissey.

19.  Notwithstanding the foregoing, inexplicably, Defendant Morrissey refused to accept and/or consider *any* of Plaintiff's filings, including, without limitation, Plaintiff's **assented-to** waiver of his appearance at arraignment.

20.  Subsequent to the foregoing, without explanation, Defendant Morrissey issued a bench warrant for Plaintiff's arrest in this action for speeding.

21.  The said warrant was Washington County Criminal Division Warrant No. 11544, issued by Defendant Morrissey on January 25, 2019.

22.  Via telephone, Defendant Morrissey's docket clerk informed Plaintiff that Defendant Morrissey refused to accept **any** of Plaintiff's filings, because they were submitted by Plaintiff *pro se* and not by an attorney.

23.  The said clerk further apprised Plaintiff of the fact that the sole reason for Defendant Morrissey's issuance of her bench warrant, to wit, Washington County Criminal Division Warrant No. 11544, was because Plaintiff's written waiver of his appearance had been submitted by Plaintiff *pro se.*

24.  There can be no dispute that Defendant Morrissey knew, or was willful in not knowing, that Plaintiff intended to be self-represented: the words "*pro se*" were conspicuously stated in the signature block of each and every filing submitted by Plaintiff.

25.  Further, via telephone, Plaintiff verbally informed the docket clerk of Defendant Morrissey that he had never hired an attorney in the subject criminal action, nor did Plaintiff have any intention of doing so.

26.  In addition, Plaintiff apprised the State of Vermont *prior* to the subject hearing, in writing, that he was self-represented.

27.  Under the Sixth Amendment of the United States Constitution, *inter alia*, Plaintiff has a non-negotiable right to be self-represented in a criminal matter.

28.  *Inter alia,* Defendant Morrissey refused to grant Plaintiff the opportunity to contest "probable cause," nor was Plaintiff granted a "probable cause" hearing.

29.  After Plaintiff was informed that he was not entitled to appeal *any* of the foregoing decisions of Defendant Morrissey, Plaintiff sought "extraordinary relief" from the Vermont Supreme Court by filing a separate complaint therefor.

30.  The Vermont Supreme Court summarily dismissed the subject complaint for "extraordinary relief" without a hearing.

31.  Accordingly, not only was Plaintiff denied his right to be self-represented in the subject criminal matter, in violation of the Sixth Amendment, Plaintiff was unlawfully denied the opportunity to contest "probable cause" in *any* state court, in contravention of the Fourth and Fourteenth Amendments.

32.  Plaintiff was unlawfully denied his right to contest the manifest Excessive Fines Clause violation. The State of Vermont now seeks *monetary* penalties against Plaintiff in excess of $1,000.00 for a single occurrence of alleged speeding through two separate actions: (1) a criminal action, wherein Plaintiff faces substantial monetary penalties payable to the State of Vermont; and (2) an entirely *separate* civil action against Plaintiff, also initiated by the State of Vermont, which additionally exposes Plaintiff to the imposition of monetary penalties—both of which were for the very same alleged occurrence of speeding.

33.  The State of Vermont now impermissibly seeks to recover twice from Plaintiff through the two separate actions for one single alleged offense, and demands that Plaintiff pay "court fees" for each action—*in addition* to the statutory penalties.

34.  Unfortunately, as a direct and foreseeable consequence of the foregoing, Plaintiff was denied both: (1) an "adequate state remedy;" and (2) an "adequate opportunity" to seek redress for any of these constitutional issues in the underlying criminal action for speeding.

## COUNT I

### 42 U.S.C. § 1983 – Deprivation of the Sixth Amendment
### Right to Self-Representation

35.   Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby reincorporates them by reference as if fully restated herein.

36.   At all times relevant hereto, Defendants acted under color of state law.

37.   At all times relevant hereto, Defendant Morrissey knew, or was willful in not knowing, that Plaintiff was self-represented.

38.   At no time did Plaintiff engage any attorney whatsoever, and expressly stated this: (1) in filings submitted to Defendant Morrissey; (2) in writing to the State of Vermont; and (3) verbally, via telephone, to Defendant Morrissey's docket clerk. Accordingly, there can be no question that Defendant Morrissey was fully apprised of the status of Plaintiff's self-representation.

39.   Through her acts and omissions, as further described hereinabove, Defendant Morrissey unlawfully discriminated against Plaintiff for merely seeking to be self-represented.

40.   *Inter alia*, Defendant Morrissey refused to allow Plaintiff to submit any filings whatsoever to the state court, thereby denying him his constitutional right to petition the judiciary.

41.   *Inter alia*, Defendant Morrissey refused to consider Plaintiff's reasonable request for a "probable cause" hearing solely on account of Plaintiff's self-representation.

42.   Only injunctive relief from this Court can prevent the prospective harm that Plaintiff will foreseeably incur from being unable to represent himself in a criminal action.

43.   Defendant Morrissey's acts and omissions violate, *inter alia*, Plaintiff's absolute, non-negotiable right to represent himself in all criminal actions pursuant to the United States Supreme Court's holding in Faretta v. California, 422 U.S. 806 (1975).

## COUNT II

### 42 U.S.C. § 1983 – Substantive and Procedural Due Process
### pursuant to the Fourteenth Amendment

44.   Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby reincorporates them by reference as if fully restated herein.

45.   At all times relevant hereto, Defendants acted under color of state law.

46.   Through the acts and omissions of Defendant Morrissey as further described hereinabove, together with the unlawful issuance of the Washington County Criminal Division Bench Warrant No. 11544 for an alleged speeding infraction, Plaintiff faces the prospective, foreseeable harm of being deprived of his Fourteenth Amendment right to procedural and substantive due process in all criminal actions.

47.   The issuance of Washington County Criminal Division Bench Warrant No. 11544 is retaliatory, and discriminates against Plaintiff for being self-represented. The foregoing is evidenced by the fact that Defendant Morrissey herself issued the said Warrant despite the fact that the State of Vermont **assented to** Plaintiff's waiver of his personal appearance at arraignment.

48.   *Inter alia*, Plaintiff was denied the opportunity to contest Defendant Morrissey's finding of probable cause.

49.   Only injunctive relief from this Court can prevent the prospective harm that Plaintiff will foreseeably incur.

## COUNT III

### 42 U.S.C. § 1983 – Probable Cause

50.   Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby reincorporates them by reference as if fully restated herein.

51.   At all times relevant hereto, Defendants acted under color of state law.

52.   Through the acts and omissions of Defendant Morrissey as further described hereinabove, together with the unlawful issuance of the Washington County Criminal Division Bench

8

Warrant No. 11544, Plaintiff faces the prospective, foreseeable harm of being deprived of his right to contest probable cause.

53. Only injunctive relief from this Court can prevent the prospective harm that Plaintiff will foreseeably incur.

## COUNT IV

### 42 U.S.C. § 1983 – Excessive Fines Clause
### pursuant to the Eighth Amendment

54. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby reincorporates them by reference as if fully restated herein.

55. At all times relevant hereto, Defendants acted under color of state law.

56. As the United States Supreme Court recently held in Timbs v. Indiana, 2019 U.S. LEXIS 1350, the Excessive Fines Clause of the Eighth Amendment extends to states such as the State of Vermont.

57. The State of Vermont seeks to impose *both* civil and criminal monetary penalties against Plaintiff in excess of $1,000 for a single alleged occurrence of speeding, in violation of the Excessive Fines Clause.

58. By bringing *separate* civil and criminal actions against Plaintiff as a "bad faith" effort to pressure him into paying the State of Vermont exorbitant and excessively punitive monetary penalties as a means of raising revenue—together with requiring Plaintiff to pay certain unspecified "court fees" for merely defending himself in the state court—such duplicative, separate actions for the very same alleged speeding offense violate the Excessive Fines Clause.

59. By discriminating against Plaintiff for being self-represented, Defendant Morrissey denied Plaintiff, and continues to deny him, the opportunity to raise the aforesaid Excessive Fines Clause defense.

## COUNT V

### 42 U.S.C. § 1983 - Facial and As-Applied Challenge to 23 V.S.A. § 1097 and 23 V.S.A. § 1004 as an Impermissible Violation of the Excessive Fines Clause

60.   Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby reincorporates them by reference as if fully restated herein.

61.   At all times relevant hereto, Defendants acted under color of state law.

62.   Pleading in the alternative, Plaintiff states that **23 V.S.A. § 1097**—a Vermont criminal statute for speeding, which provides for *monetary* penalties—is constitutionally impermissible, and constitutes a violation of the Excessive Fines Clause.

63.   **23 V.S.A. § 1004**, a civil statute, is redundant and duplicative, as it also provides for *monetary* penalties for speeding.

64.   The State of Vermont now seeks to collect monetary damages **twice** from Plaintiff: once under 23 V.S.A. § 1097, and once again under 23 V.S.A. § 1004—all for the very same alleged speeding offense.

65.   Defendant Morrissey unlawfully denied, and continues to deny, Plaintiff of any opportunity at all to contest the constitutionality of the aforesaid duplicative statutes.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all claims, issues, and questions of fact so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** on the premises aforesaid, Plaintiff prays for relief and respectfully requests that this Honorable Court:

(i)     Issue a preliminary injunction staying and/or quashing Washington County Criminal Division Warrant No. 11544 until the conclusion of this action;

(ii)    Issue a mandatory injunction and order permanently barring and enjoining Defendants from engaging in such unlawful and unconstitutional conduct;

(iii)   Issue a mandatory injunction and order barring enforcement of the unconstitutional state court judgment against Plaintiff;

(iv)    Enter a declaratory judgment in favor of Plaintiff and against Defendants on all counts of the complaint;

(iii)   Award Plaintiff attorneys' fees, if any, together with costs and expenses; and

(iv)    Grant such further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

JONATHAN MULLANE,
Plaintiff *pro se*
60 Clyde Street, Unit #1
Somerville, MA 02145
Tel.: (617) 800-6925
j.mullane@icloud.com

DATED: April 14, 2019

## VERIFICATION

I, JONATHAN MULLANE, under oath, hereby state that I have reviewed the within Verified Complaint, and, based upon my own personal knowledge, hereby verify and affirm that the allegations contained therein are true and accurate, and hereby certify that no material facts have been omitted therefrom.

Signed under the pains and penalties of perjury this 14th Day of April, 2019.

JONATHAN MULLANE

11